[No. 9976. *En Banc.* November 10, 1911.]

## THE STATE OF WASHINGTON, *on the Relation of* GEO. H. ECKDAHL *et al., Plaintiff,* v. KING DYKEMAN, *Judge etc., Respondent.*[1]

INTOXICATING LIQUORS—LOCAL OPTION—SPECIAL ELECTION—TIME FOR HOLDING—STATUTES—CONSTRUCTION. A special election upon the local option question cannot be held after the general election in November, 1910, except biennially on the general election day, under Rem. & Bal. Code, § 6293, passed in 1909, providing that a special election may be held as provided therein, and thereafter no election shall be held except at the general county election, and that in the event that a special election is held, no other election shall be held prior to the general county election of 1910, and thereafter at the said general election biennially.

Certiorari to review an order of the superior court for King county, Dykeman, J., entered October 28, 1911, denying a writ of mandate to compel the calling of a special election under the provisions of the local option law. Affirmed.

*L. E. Kirkpatrick* and *Boyd P. Doty,* for relators.
*John F. Murphy* and *Robert H. Evans,* for respondent.

[1]Reported in 118 Pac. 732.

MORRIS, J.—This proceeding involves the construction of the act of 1909, Law 1909, p. 153, ch. 81 (Rem. & Bal. Code, § 6292 *et seq.*), known as the local option law, in so far as the act permits the calling of special elections; it being sought by this writ to review the order of respondent denying a writ of mandate to the auditor of King county, whereby it was sought to compel the calling of a special election in that unit of King county outside of incorporated towns and cities, to determine the right of sale of intoxicating liquors in such unit. Section 1 of the act in question creates the several units of territory. Section 2 provides for the calling of a special election as follows:

"Within any unit hereinbefore created, a special election may be held upon the question of whether the sale of intoxicating liquor shall be permitted within that unit, upon compliance with the conditions hereinafter prescribed; thereafter no election upon the question of the sale of intoxicating liquor shall be held except on the day of the general county election. In the event that a special election is held in any unit hereunder, no other election under the provisions of this act upon the question of the sale of intoxicating liquor within such unit shall be held prior to the day of the general county election of 1910, and thereafter at the said general election biennially." Rem. & Bal. Code, § 6293.

The first part of this section when first read would seem to indicate that it was its intention to permit one special election, and but one, in each unit; and that, subsequent to such special election, the matter could only be submitted at the general county election every second year. A careful study of the latter part of the section, however, makes plain to us that such is not the purpose and intent of the act. The latter part of the section is complete in itself, and is in the nature of a proviso and rule of interpretation for the preceding part. It reads:

"In the event that a special election is held in any unit hereunder, no other election under the provisions of this act upon the question of the sale of intoxicating liquor within such unit shall be held prior to the day of the general county

election of 1910, and thereafter at the said general election biennially."

What election is referred to by the phrase "no other election," unless it be the special election previously provided for, giving the section the same effect as if reading "no other election than the special election in any unit shall be held prior . to the general election of 1910"? If no other election than the special election in each unit may be held prior to the general election of 1910, then, construing the language with the other provisions of this section, manifestly the general election of 1910 is a limitation upon all· special elections, and none may be held thereafter. The clause beginning "and thereafter," following this limitation, can have no other meaning than, after the general election of 1910, there can be no election except at the general county election, and the limitation is thus preserved until the following general election.

Relators argue that the limitation is not upon a special election, but following the language of the first clause in the second sentence, "In the event that a special election is held," makes the holding of the special election the limitation; and that where none is held, there is no limitation. Such a construction might be accepted if it were not that, except for the last clause, the only time provided in the section in which any election can be held is prior to and at the general election of 1910. Taking such a position and leaving out the clause, "In the event that a special election is held in any unit," as not applying when no special election is held, we would have the section as if reading, "A special election under the provisions of this act may be held prior to the day of the general county election of 1910, and thereafter at the said general election biennially." Such a reading—there could be no other—plainly fixes the general county election of 1910 as the limit of such special election. And we come back to the first interpretation, that no election may be held under this act prior to 1910, except the special election which may be

held if called prior to the general county election of 1910; and if not so called, such county election fixes the limit after which no election shall be had under this act except at the regular biennial county elections.

If relators' contention be followed, the second sentence of the section, beginning with and following the words, "In the event that a special election is held," can have no meaning whatever, since the first part of the section would be sufficient to provide for one special election in each unit at any time, and after the holding of one such special election to limit subsequent elections to the time of the general county election. The language of the first sentence is simple and fully effectual to express such an intent. No other interpretation can be placed upon the words there used. It must, therefore, be assumed that in the use of the second sentence, the legislature intended to add something, to provide for some contingency not covered in the first sentence, and that contingency is the evident fixing and limitation of the time in which the right to such special election must be exercised prior to the general election of 1910; and, seeking to further explain the meaning of the second sentence, it is added, "and thereafter at the said general election biennially." In other words, an election may be held at any time prior to the general election of 1910, at the time of the general election of 1910, or at any succeeding general county election.

If we reflect upon what the legislature evidently had in mind at the time of the passage of the act, such a conclusion is natural and simple. There was at that time much agitation over the local option question. Any act passed by the legislature would, without any emergency clause, go into effect in June, 1909. The next general county election would be in November, 1910, some seventeen months after the act went into effect. It was desired to give the people of each unit an opportunity to express their sentiment on the liquor question, and to that end it was provided that they need not await the next general election, nearly a year and a half away, before

doing so, but might, if they so desired, call a special election and test the question at once; otherwise they must await the next general election.

If such was not the intent, what sense or reason called for only one special election in each unit? Why not have a special election as often as the people desired? No reason, except the evident intention to have the question submitted as any other political question at the time fixed by the laws of the state for the determination and settlement of such questions, except that, to quell the agitation and settle the question during the biennial period in which it could not be submitted at a general election, it might be submitted at a special election. It may be that the majority of the people within the unit represented by relators are opposed to the sale of intoxicating liquors within such territory. Such a consideration, even though it should appear, cannot influence the courts in announcing the law. They must write it as they find it, irrespective of the will of majorities or minorities. If opposed to the sale of liquors, the people of this unit have had two opportunities to so express themselves since the law went into effect. Having failed to do so, and slept on their right, they must now await the coming of the third period, when, in the due course of events, opportunity will be given to express such opposition.

The judgment is affirmed.

All concur.